THIS OPINION HAS NO PRECEDENTIAL
VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT
AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Supreme Court
 

 
 
 
 
 In the Matter of Thomas E. Elliott, Jr., Respondent.
 
 
 

Memorandum Opinion No. 2004-MO-042
 Submitted May 13, 2004 - Filed August 2, 2004

DISMISSED  

 
 
 
 
 Barbara M. Seymour, Senior Assistant Disciplinary Counsel, of Columbia, 
 for the Office of Disciplinary Counsel.
 Thomas E. Elliott, Jr., of Columbia, pro se.
 
 
 

PER CURIAM:  This disciplinary action arises from respondent 
 Thomas Elliotts representation of Mary Brown (Brown) in a case recently reviewed 
 on certiorari by this Court: Brown v. Zamias, Op. No. 2002-UP-715 (S.C. 
 Ct. App. filed November 15, 2002), certiorari dismissed as improvidently 
 granted, Op. No. 2004-MO-10 (S.C. Sup. Ct. filed April 5, 2004).  The case 
 was a negligence action brought by Brown after she tripped and fell across an 
 extension cord on the floor of a Rock Hill mall.  
In this disciplinary matter, Brown alleges that 
 respondent failed to depose two potential deponents and conditioned his taking 
 of the depositions upon her prepaying the deposition costs.  The Subpanel for 
 the Commission on Lawyer Conduct (Subpanel) found that respondent did not commit 
 lawyer misconduct but recommended the issuance of a letter of caution.  We find 
 that the charges against respondent should be dismissed.  
Factual/Procedural Background 
Brown was injured when she tripped over an extension cord at a Rock Hill Mall 
 on Christmas Eve 1997.  Moments before Brown tripped, the Matthews, a couple 
 from Winston-Salem, had just walked over the cord, and Mrs. Matthews nearly 
 tripped over the cord.  Because they were only a few yards away, the Matthews 
 heard Brown fall, returned to where she had fallen, and told her that they would 
 be happy to provide testimony of the unsafe condition that the power cord had 
 created.
Brown hired respondent to represent her in a negligence action against the 
 mall.  She signed a retainer agreement, which established a 33.3% contingency 
 fee for respondent and provided:

 If, however, suit shall be required to obtain recovery, the client agrees 
 to pay litigation costs to initiate this action in the amount of N/A.

On August 22, 2000, the Matthews sent letters to 
 respondent describing the events of Christmas Eve 1997 and expressing their 
 willingness to further assist Brown in her attempt to receive the compensation 
 she deserves.  On August 28, 2000, in a letter to Brown, respondent wrote: 
 I anticipate that I should try to make plans to go to Winston-Salem to take 
 [the Matthews] depositions for presentation at court.  Obviously, it would 
 be an extreme inconvenience for them to travel to York County on short notice 
 to testify.  
During the course of respondents preparation of 
 Browns pending litigation, he incurred significant discovery expenses, including 
 those incurred from taking a video deposition of Browns doctors in Columbia.  
 On various occasions, respondent asked Brown to pay for these pre-litigation 
 costs, and Brown either was unable to pay or refused to pay for these expenses.
Respondent told Brown that in order for him to travel to Winston-Salem to take 
 the Matthews depositions, Brown would have to pay the deposition expenses in 
 advance.  Brown did not prepay those discovery costs, and therefore respondent 
 did not take the depositions.  
After the Commissions investigation into respondents potential misconduct 
 began, respondent stated to the investigating attorney (ATA) that the primary 
 issue in dispute in Brownss case was damages, as there was a question of whether 
 Browns prior orthopedic problems contributed to the medical expenses she incurred 
 from falling on the mall floor.  Thus, in respondents view, the Matthews testimony 
 -- that the cord was on the floor of the mall right before Browns injury -- 
 would not have shed any light on the damages issue.
Brown also complained of (1) respondents failure to keep her informed about 
 her case and (2) the abrupt nature in which respondent whisked her to the trial.  
 The case moved up the York County roster such that Brown did not find out when 
 her case was going to trial until the morning of her trial.  Respondent prepared 
 Brown for trial on the way from Columbia to Rock Hill, and the trial proceeded 
 that afternoon.  Brown prevailed, and, after the trial judge denied the malls 
 motion for a directed verdict, the jury awarded $43,000 in damages but apportioned 
 fault 50%-50% between Brown and the mall.
The mall appealed, and the court of appeals reversed the trial courts decision.  
 The court of appeals found that as an invitee, Brown was owed only the duty 
 to be warned of a latent hazard.  And since Brown testified that she immediately 
 saw the cord and cover when she looked back after falling and that had she 
 been looking down or watching where she was walking she would have seen the 
 cover and been able to avoid tripping, the court ruled that the cord was an 
 open and obvious hazard, and thus no duty was breached.  Zamias, Op. 
 No. 2002-UP-715 at 3-5.   
After reviewing respondents conduct in Browns case, namely (1) respondents 
 failure to depose the Matthews and demand that Brown pay for the depositions 
 in advance and (2) respondents alleged mischaracterization to the ATA that 
 the primary issue in Browns case was damages, [1] the Subpanel determined that respondent did 
 not violate any Rules of Professional Conduct but determined that his 
 conduct warranted a letter of caution.  The full Panel of the Commission on 
 Lawyer Conduct adopted this finding.  
Law/Analysis
The Subpanel found that respondent did not violate Rules 1.1 (competent representation), 
 1.3 (diligence and promptness), and 1.4 (keeping the client reasonably informed) 
 of the Rules of Professional Conduct, 407, SCACR, for failing to depose 
 the Matthews because their testimony was not determinative on the issue of Browns 
 damages or the issue of whether the mall was on notice of the hazardous condition.  
 We agree with the Subpanel and find that the Matthews depositions were not 
 essential to Browns case. 
The Subpanel also found that respondent did not violate Rules 1.4 (keeping 
 the client reasonably informed) and 1.5 (charging reasonable fees) by demanding 
 that Brown prepay the deposition expenses.  The contingency fee agreement that 
 Brown signed contained an ambiguous provision concerning litigation fees that 
 stated that the amount Brown may have to pay in litigation costs was N/A.  
 This ambiguous provision could have led Brown to conclude -- as she did -- that 
 she need not pay any pre-trial expenses.  
Since the inquiry into respondents potential misconduct 
 began, respondent has omitted this provision from his standard retainer agreement.  
 We hold that respondents decision to remove the litigation cost provision from 
 his retainer agreement represents the appropriate corrective action in this 
 matter.
Conclusion
Upon full review of the record in this matter, we find that the charges against 
 respondent should be DISMISSED.

 
 
 
 s/Jean H. Toal                                   
   C.J.
 s/James E. Moore                             
       J.
 s/John H. Waller, Jr.                           
       J.
 s/E. C. Burnett, III                                
       J.
 s/Costa M. Pleicones                        
       J.
 
 

 
 
 [1] Initially, the ATA believed that respondent deliberately misrepresented 
 that the only issue at trial was damages, but the Subpanels report noted 
 that the ATA no longer believed that to be the case.